UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.

**DANIEL MONCADA**,

      Plaintiff,

vs.

**FOODFIRST GLOBAL RESTAURANTS,
INC., d/b/a BRIO TUSCAN GRILLE, a
foreign for-profit corporation,**

      Defendant.

_____/

## COMPLAINT

Plaintiff DANIEL MONCADA, through undersigned counsel, sues Defendant, FOODFIRST GLOBAL RESTAURANTS, INC., d/b/a BRIO TUSCAN GRILLE, a foreign for-profit corporation, and alleges as follows:

1.    This is an action for declaratory and injunctive relief pursuant to Title III of the Americans with Disabilities Act, 42 U.S.C. §§12181-12189 ("ADA"), as amended, and 28 C.F.R. Part 36.  This is also an action for declaratory and injunctive relief to prevent discrimination which includes equal access to internet Mobile Website for services to order and secure information about Defendant's restaurants online. This is also an action for declaratory and injunctive relief to prevent the continuing act of trespass against the Plaintiff's personal property (his handheld mobile smartphone device, hereinafter referred to as "mobile device"), and for compensatory damages to Plaintiff for such trespass.  Remedies provided under common law for trespass are not exclusive and may be sought in connection with suits brought under the ADA.

2.      This Court has jurisdiction over this case based on federal question jurisdiction, 28 U.S.C. §1331 and the provisions of the ADA.  Plaintiff seeks declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201 and 2202.  In addition, this Court has supplementary jurisdiction over Plaintiff's common law tort claim pursuant to 28 U.S.C. §1367.

3.      Venue is proper in this Court as all actions complained of herein and injuries and damages suffered occurred in the Broward County in the Southern District of Florida.

4.      Plaintiff DANIEL MONCADA is a resident of Broward County, Florida, is *sui juris*, and is disabled as defined by the ADA and ADA Amendments Act of 2008, 42 U.S.C. §12101 ("ADAAA").

5.      Plaintiff is and at all relevant times has been visually disabled and suffers from bilateral retinopathy and retinal detachment, a permanent eye disease and medical condition that substantially and significantly impairs his vision. Plaintiff thus is substantially limited in performing one or more major life activities, including, but not limited to, accurately visualizing his world and adequately traversing obstacles.  As such, he is a member of a protected class under the ADA, 42 U.S.C. § 12102(1)-(2), the regulations implementing the ADA set forth at 28 CFR §§ 36.101, *et seq*., and in 42 U.S.C. §3602(h).

6.      Because he is visually disabled, Plaintiff cannot use his mobile device without the assistance of appropriate and available screen reader software.

7.      Defendant is a foreign for-profit corporation authorized to do business and doing business in the State of Florida, including Broward County, Florida. Defendant owns and operates a chain of Italian-themed restaurants in the United States, including locations within the Broward County, Florida.

8.     Plaintiff's visual disability limits him in the performance of major life activities, including sight, and he requires assistive technologies, auxiliary aids and services for effective communication, including communication in connection with his use of a mobile device.

9.     Plaintiff frequently accesses the internet.   Because he is significantly and permanently visually disabled, in order to effectively communicate and comprehend information available on the internet and hereby access/comprehend mobile websites, Plaintiff uses commercially available screen reader software to interface with the various mobile websites.

10.     At all times material hereto, Defendant was and still is an organization; which owns and operates a chain of restaurants selling food under the brand name "Brio". Each Brio restaurant is open to the public.   As the owner and operator of these restaurants, Defendant is defined as a place of "public accommodation" within meaning of Title III because Defendant is a private entity which owns and/or operates "[A] bakery, grocery store, clothing store, hardware store, shopping center, or other sales or rental establishment," per 42 U.S.C. §12181(7)(E) and 28 C.F.R. §36.104(2).

11.     Because Defendant is a store open to the public, each of Defendant's physical restaurants is a place of public accommodation subject to the requirements of Title III of the ADA and its implementing regulation; 42 U.S.C. §12182, §12181(7)(E), and 28 C.F.R. Part 36.

12.     Defendant controls, maintains, and/or operates an adjunct website and mobile website called https://www.brioitalian.com (hereinafter the "Mobile Website") that is configured for use by mobile devices such as smartphones to access Defendant's internet Mobile Website. One of the functions of the Mobile Website is to provide the public information on the various physical locations of Defendant's restaurants throughout the United States and within the State of Florida.   Defendant also sells to the public its food through the Mobile Website.

3

13.     The Mobile Website also services Defendant's restaurants by providing information on its available food products and branded merchandise, tips and advice, editorials, sales campaigns, events, and other information that Defendant is interested in communicating to its customers.

14.     Since the Mobile Website allows the public the ability to locate Defendant's physical restaurants, order food online that is also offered for sale by Defendant from its physical restaurants,  purchase gift cards for use online and at the physical restaurants, check gift card balances for use online and at the physical restaurants, and sign up for an electronic emailer to receive offers, benefits, exclusive invitations, and discounts for use at the physical restaurants, the Mobile Website is an extension of, and gateway to, Defendant's physical restaurants.  By this nexus, the Mobile Website is characterized as an intangible service, privilege and advantage provided by a place of public accommodation as defined under the ADA and thus an extension of the services, privileges and advantages made available to the general public by Defendant through its brick and mortar locations and businesses.

15.     Because the public can view and order Defendant's food online that is also offered for sale by Defendant in its physical restaurants, purchase gift cards for use online and at the physical restaurants, check gift card balances for use online and at the physical restaurants, and sign up for an electronic emailer to receive offers, benefits, exclusive invitations, and discounts for use at the physical restaurants, the Mobile Website is an extension of, and gateway to, the physical restaurants, which are places of public accommodation pursuant to the ADA, 42 U.S.C. § 12181(7)(E).  As such, the Mobile Website is an intangible service, privilege and advantage of Defendant's brick and mortar store locations that must comply with all requirements of the ADA, must not discriminate against individuals with visual disabilities, and must not deny those

individuals the same full and equal enjoyment of the services, privileges and advantages afforded to the non-disabled general public both online and at the physical restaurant locations.

16.     At all times material hereto, Defendant was and still is an organization owning and operating the Mobile Website.  Since the Mobile Website is open to the public through the internet, by this nexus the Mobile Website is an intangible service, privilege and advantage of Defendant's brick and mortar restaurants that must comply with all requirements of the ADA, must not discriminate against individuals with visual disabilities, and must not deny those individuals the full and equal enjoyment of the services, privileges and advantages afforded to the non-disabled public both online and at the physical store.  As such, Defendant has subjected itself and the associated Mobile Website to the requirements of the ADA.

17.     Plaintiff is and/or has been a customer who is interested in patronizing, and intends to patronize, Defendant's physical restaurants, and to order food online that is also offered for sale by Defendant at its physical restaurants, purchase gift cards for use online and at the physical restaurants, check gift card balances for use online and at the physical restaurants, and sign up for an electronic emailer to receive offers, benefits, exclusive invitations, and discounts for use at the physical restaurants.

18.     The opportunity to, from his home, shop and pre-shop Defendant's food, order food online that is offered for sale by Defendant in its physical restaurants, purchase gift cards for use online and at the physical restaurants, check gift card balances for use online and at the physical restaurants, and sign up for an electronic emailer to receive offers, benefits, exclusive invitations, and discounts for use at the physical restaurants are important accommodations for Plaintiff because traveling outside of his home as a blind individual is often difficult, hazardous, frightening, frustrating and confusing experience.  Defendant has not provided its business

information in any other digital format that is accessible for use by blind and visually disabled individuals using available screen reader software.

19.     Like many consumers, Plaintiff accesses numerous mobile websites at a time to compare food, prices, sales, discounts, and promotions. Plaintiff may look at several dozens of sites to compare features, discounts, promotions, and prices.

20.     During the month of March 2019 and thereafter, Plaintiff attempted on a number of occasions to utilize the Mobile Website to browse through the food and on-line offers to educate himself as to the food, sales, discounts, and promotions being offered, and with the intent to making a purchase through the Mobile Website or at one of the Defendant's restaurants.

21.     Plaintiff utilizes Voiceover screen reader software that allows individuals who are visually disabled to communicate with mobile websites.  However, Defendant's Mobile Website contains access barriers that prevent free and full use by visually disabled individuals using keyboards and available screen reader software.  These barriers are pervasive and include, but are not limited to:

        a. Mislabeled navigation option;

        b. Non-describing images; and

        c. Mislabeled button.

22.     The Mobile Website also lacks prompting information and accommodations necessary to allow visually disabled individuals who use screen reader software to locate and accurately fill out online forms to order Defendant's food from the Mobile Website.

23.     Plaintiff attempted to locate an "Accessibility Notice" on the Mobile Website, which would direct him to a webpage with contact information for disabled individuals who have questions, concerns, or who are having difficulties communicating with the Mobile Website.

However, although there appeared to be an accessibility statement on the Mobile Website, Plaintiff was still unable to fully access the Mobile Website.

24.     The fact that Plaintiff could not communicate with or within the Mobile Website left him feeling excluded, as he is unable to participate in the same online mobile shopping experience, with access to the food, sales, discounts, and promotions as provided  at the Mobile Website and for use in the physical restaurants, as the non-visually disabled public.

25.     Plaintiff continues to desire and intent to patronize Defendant's physical restaurants and to use its Mobile Website but is unable to fully do so as he is unable to effectively communicate with Defendant due to his blindness and Defendant's Mobile Website's access barriers.  Thus, Plaintiff, as well as others who are blind or with visual disabilities, will suffer continuous and ongoing harm from Defendant's intentional acts, omissions, policies, and practices as set forth herein unless properly enjoined by this Court.

26.     Because of the nexus between Defendant's restaurants and the Mobile Website, and the fact that the Mobile Website clearly provides support and is connected to Defendant's restaurants for its operation and use, the Mobile Website is an intangible service, privilege and advantage of Defendant's brick and mortar restaurants that must comply with all requirements of the ADA, must not discriminate against individuals with disabilities, and must not deny those individuals the same full and equal enjoyment of the services, privileges and advantages afforded to the non-disabled public both on-line and at its physical locations, which are places of public accommodations subject to the requirements of the ADA.

27.     On information and belief, Defendant has not initiated a Web Accessibility Policy to insure full and equal use of the Mobile Website by individuals with disabilities.

28.     On information and belief, Defendant has not instituted a Web Accessibility Committee to insure full and equal use of Mobile Website by individuals with disabilities.

29.     On information and belief, Defendant has not designated an employee as a Web Accessibility Coordinator to insure full and equal use of the Mobile Website by individuals with disabilities.

30.     On information and belief, Defendant has not instituted a Web Accessibility User Accessibility Testing Group to insure full and equal use of the Mobile Website by individuals with disabilities.

31.     On information and belief, Defendant has not instituted a User Accessibility Testing Group to insure full and equal use of the Mobile Website by individuals with disabilities.

32.     On information and belief, Defendant has not instituted a Bug Fix Priority Policy.

33.     On information and belief, Defendant has not instituted an Automated Web Accessibility Testing program.

34.     On information and belief, Defendant has not created and instituted a Specialized Customer Assistance line or service or email contact mode for customer assistance for the visually disabled.

35.     On information and belief, Defendant has not created and instituted on the Mobile Website a page for individuals with disabilities, nor displayed a link and information hotline, nor created an information portal explaining when and how Defendant will have the Mobile Website, applications, and digital assets accessible to the visually disabled or blind community.

36.     On information and belief, the Mobile Website does not meet the Web Content Accessibility Guidelines 2.0 ("WCAG 2.0") Level AA or higher of web accessibility.

37.     On information and belief, Defendant has not disclosed to the public any intended audits, changes, or lawsuits to correct the inaccessibility of the Mobile Website to visually disabled individuals who want the safety and privacy of purchasing Defendant's food offered on the Mobile Website online from their homes.

38.     Thus, Defendant has not provided full and equal enjoyment of the services, facilities, privileges, advantages, and accommodations provided by and through the Mobile Website, in contravention of the ADA.

39.     Further, public accommodations under the ADA must insure that their places of public accommodation provide effective communication for all members of the general public, including individuals with disabilities such as Plaintiff.

40.     The broad mandate of the ADA is to provide an equal opportunity for individuals with disabilities to participate in and benefit from all aspects of American civic and economic life. That mandate extends to internet shopping Mobile Websites, such as the Mobile Website.

41.     On information and belief, Defendant is, and at all times has been, aware of the barriers to effective communication within the Mobile Website which prevent individuals with disabilities who are visually disabled from the means to comprehend information presented therein.

42.     On information and belief, Defendant is aware of the need to provide full access to all visitors to the Mobile Website.

43.      The barriers that exist on the Mobile Website result in discriminatory and unequal treatment of individuals with disabilities who are visually disabled, including Plaintiff.

44.     Plaintiff has no plain, adequate, or complete remedy at law to redress the wrongs alleged hereinabove, and this suit for declaratory judgment and injunctive relief is his only means

to secure adequate and complete redress from Defendant's unlawful and discriminatory practices in connection with its website access and operation.

45.     Notice to Defendant is not required because of Defendant's failure to cure the violations.

46.     Enforcement of Plaintiff's rights under the ADA is right and just pursuant to 28 U.S.C. §§ 2201 and 2202.

47.     Plaintiff has retained the undersigned attorneys to represent him in this case and has agreed to pay them a reasonable fee for their services.

**Trespass Violations**

48.     Plaintiff utilizes his handheld mobile device to access websites such as the  Mobile Website.

49.     Plaintiff uses his mobile device as a method of conveyance of his personal information.  Plaintiff thus restaurants his personal information and retains his browsing history on his mobile device.

50.     Throughout the Mobile Website, Defendant has placed forms of software to collect non-public information on the website's user's preferences and internet browsing habits.

51.     Defendant informs the Mobile Website user that the user's personal information and browsing history is collected and is used for targeted marketing and advertising.

52.     Because of his blindness, Plaintiff was unable to comprehend the Mobile Website; therefore, Plaintiff has had no choice, and likewise no knowledge, of Defendant's installation of data and information tracking software and the collection of the website user's browsing history and analytics placed on the user's handheld device.

53.     Based upon the review of the Mobile Website, when a user accesses the Mobile Website, Defendant installs software onto the user's handheld device, without the user's advance consent or knowledge.  It is also clear that Defendant has used browser cookies to identify websites that Plaintiff has previously visited by accessing Plaintiff's web browser history.

54.     As such, through its Mobile Website, Defendant has committed a trespass against the Plaintiff, since the Mobile Website places information gathering software on the Plaintiff's handheld device without Plaintiff's knowledge or consent.

### COUNT I – VIOLATION OF THE ADA

55.     Plaintiff re-alleges paragraphs 1 through 47 as if set forth fully herein.

56.     Pursuant to 42 U.S.C. §12181(7)(E), Defendant is a public accommodation under the ADA because it owns and/or operates the Mobile Website, as defined within §12181(7)(E) and is subject to the ADA.

57.     Pursuant to 42 U.S.C. §12181(7)(E), the Mobile Website is covered under the ADA because it provides the general public with the ability to locate Defendant's physical restaurants, order food online also offered for sale by Defendant from its physical restaurants, purchase gift cards for use online and at the physical restaurants, check give card balances for use on-line and at the physical restaurants, and sign up for an electronic emailer to receive offers, benefits, exclusive invitations, and discounts for use at the physical restaurants.  The Mobile Website thus is an extension of, and gateway to, and an intangible service, privilege and advantage of Defendant's physical restaurants.  Further, the Mobile Website also serves to augment Defendant's physical restaurants by providing the public information on the various physical locations of the restaurants and educating the public as to Defendant's available food sold through the Mobile Website and in its physical restaurants.

58.     Under Title III of the ADA, 42 U.S.C. § 12182(b)(1)(A)(II), it is unlawful discrimination to deny individuals with disabilities or a class of individuals with disabilities an opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodation, which is equal to the opportunities afforded to other individuals.

59.     Specifically, under Title III of the ADA, 42 U.S.C. § 12182(b)(2)(A)(II), unlawful discrimination includes, among other things, "a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages or accommodations."

60.     In addition, under Title III of the ADA, 42 U.S.C. § 12182(b)(2)(A)(III), unlawful discrimination also includes, among other things, "a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden."

61.     Defendant's Mobile Website must be in compliance with the ADA, but it is not, as specifically alleged hereinabove and below.

62.     Because of the inaccessibility of the Mobile Website, individuals with disabilities who are visually disabled are denied full and equal enjoyment of the information and services that Defendant has made available to the public on its Mobile Website, and at its physical restaurants, in violation of 42 U.S.C. §12101, *et seq*, and as prohibited by 42 U.S.C. §12182, *et seq*.

12

63. The Mobile Website was visited in or about May 2019 by Plaintiff's expert, and the expert determination was that the same access barriers that Plaintiff had initially encountered in March 2019 continued to exist. Despite Defendant being subject to a prior ADA accessibility lawsuit in the Southern District of Florida, and a confidential settlement being reached therein, Defendant did not make the necessary changes or improvements to the Mobile Website to enable its full use and enjoyment by, and accessibility to, visually disabled persons such as Plaintiff. When the Website was revisited, it was determined that although the Website appeared to have an accessibility notice displayed on its Mobile Website, that accessibility notice still could not be accessed by and continued to be a barrier to visually disabled persons such as Plaintiff. Thus, Defendant had made no material changes or improvements to the Mobile Website since its prior confidential settlement to enable its full use, enjoyment and accessibility for visually disabled persons such as Plaintiff. The Mobile Website continues to be not fully accessible to blind and visually disabled users based on the following barriers among others:

        a.      Mislabeled navigation option;

        b.      Non-describing images; and

        c.      Mislabeled button.

*See*, Expert Declaration and Curriculum Vitae of Robert D. Moody, attached as Composite Exhibit "A".

64. More violations may be present on other pages of the Mobile Website, which can and will be determined and proven through the discovery process in this case.

65. Further, the Mobile Website does not offer or include the universal symbol for the disabled that would permit disabled individuals to access the Mobile Website's accessibility information and accessibility facts.

66.     There are readily available, well established guidelines on the internet for making Mobile Websites accessible to the blind and visually disabled. These guidelines have been followed by other large business entities in making their websites accessible. Examples of such guidelines include, but not limited to, adding alt-text to graphics and ensuring that all functions can be performed using a keyboard. Incorporating such basic components to make the Mobile Website accessible would neither fundamentally alter the nature of Defendant's business nor would it result in an undue burden to the Defendant.

67.     Defendant has violated the ADA -- and continues to violate the ADA -- by denying access to the Mobile Website by individuals, such as Plaintiff, with visual disabilities who requires the assistance of interface with screen reader software to comprehend and access internet websites. These violations within the Mobile Website are ongoing.

68.     The ADA and ADAAA require that public accommodations and places of public accommodation ensure that communication is effective.

69.     According to 28 C.F.R. §36.303(b)(1), auxiliary aids and services include "voice, text, and video-based telecommunications products and systems". Indeed, 28 C.F.R. §36.303(b)(2) specifically states that screen reader software is an effective method of making visually delivered material available to individuals who are blind or have low vision.

70.     According to 28 C.F.R. §36.303(c), public accommodations must furnish appropriate auxiliary aids and services where necessary to ensure effective communication with individuals with disabilities: "In order to be effective, auxiliary aids and services must be provided in accessible formats, in a timely manner, and in such a way as to protect the privacy and independence of the individual with a disability," 28 C.F.R. §36.303(c)(1)(ii).

71.    Part 36 of Title 28 of the C.F.R. was designed and is implemented to effectuate subtitle A of Title III of the ADA, which prohibits discrimination on the basis of disability by public accommodations, and requires places of public accommodation to be designed, constructed, and altered in compliance with the accessibility standards established by Part 36.

72.    As alleged hereinabove, the Mobile Website has not been designed to interface with the widely and readily available technologies that can be used to ensure effective communication, and thus violates the ADA.

73.    As a direct and proximate result of Defendant's failure to provide an ADA compliant Mobile Website, with a nexus to its brick and mortar physical restaurants locations, Plaintiff has suffered an injury in fact by being denied full access to and enjoyment of Defendant's Mobile Website and physical restaurants.

74.    Because of the inadequate development and administration of the Mobile Website, Plaintiff is entitled to injunctive relief pursuant to 42 U.S.C. §12133 and 28 C.F.R. §36.303, to remedy the ongoing disability discrimination.

75.    Pursuant to 42 U.S.C. §12188, this Court is vested with the authority to grant Plaintiff appropriate and necessary injunctive relief; including an order to:

a)    Require Defendant to adopt and implement a web accessibility policy to make publicly available and directly link from the homepage of the Mobile Website to a statement as to the Defendant's policy to ensure persons with disabilities have full and equal enjoyment of the services, facilities, privileges, advantages, and accommodations through the Mobile Website.

b)    Require Defendant to take the necessary steps to make the Mobile Website readily accessible to and usable by visually disabled users, and during that time period prior to the Mobile Website's being readily accessible, to provide an alternative method for individuals with visual

disabilities to access the information available on the Mobile Website until such time that the requisite modifications are made, and

c) Require Defendant to provide the appropriate auxiliary aids such that individuals with visual impairments will be able to effectively communicate with the Mobile Website for purposes of viewing and locating Defendant's physical restaurants and locations, and becoming informed of and purchasing Defendant's food online, and during that time period prior to the Mobile Website's being designed to permit individuals with visual disabilities to effectively communicate, to provide an alternative method for individuals with visual disabilities to effectively communicate for such goods and services made available to the general public through the Mobile Website.

76.     Plaintiff is entitled to recover his reasonable attorney's fees, costs and expenses pursuant to the ADA.  To that end, Plaintiff has been obligated to retain the undersigned counsel for the filing and prosecution of this action and has agreed to pay them a reasonable fee for their services.

WHEREFORE, Plaintiff requests entry of judgment in his favor and against Defendant for the following relief:

A. A declaration that Defendant's Mobile Website is in violation of the ADA;

B. An Order requiring Defendant, by a date certain, to update the Mobile Website, and continue to monitor and update the Mobile Website on an ongoing basis, to remove barriers in order that individuals with visual disabilities can access, and continue to access, the Mobile Website and effectively communicate with the Mobile Website to the full extent required by Title III of the ADA;

C.    An Order requiring Defendant, by a date certain, to clearly display the universal disabled logo within the Mobile Website, wherein the logo[1] would lead to a page which would state Defendant's accessibility information, facts, policies, and accommodations. Such a clear display of the disabled logo is to insure that individuals who are disabled are aware of the availability of the accessible features of the Mobile Website;

D.    An Order requiring Defendant, by a date certain, to provide ongoing support for web accessibility by implementing a website accessibility coordinator, a website application accessibility policy, and providing for website accessibility feedback to insure compliance thereto;

E.    An Order directing Defendant, by a date certain, to evaluate its policies, practices and procedures toward persons with disabilities, for such reasonable time to allow Defendant to undertake and complete corrective procedures to its Mobile Website;

F.    An Order directing Defendant, by a date certain, to establish a policy of web accessibility and accessibility features for the Mobile Website to insure effective communication for individuals who are visually disabled;

G.    An Order requiring, by a date certain, that any third-party vendors who participate on Defendant's Mobile Website to be fully accessible to the visually disabled;

H.    An Order directing Defendant, by a date certain and at least once yearly thereafter, to provide mandatory web accessibility training to all employees who write or develop programs or code for, or who publish final content to, the Mobile Website on how to

---



[1]

conform all web content and services with ADA accessibility requirements and applicable accessibility guidelines;

I. An Order directing Defendant, by a date certain and at least once every three months thereafter, to conduct automated accessibility tests of the Mobile Website to identify any instances where the Mobile Website is no longer in conformance with the accessibility requirements of the ADA and any applicable accessibility guidelines, and further directing Defendant to send a copy of the twelve (12) quarterly reports to Plaintiff's counsel for review;

J. An Order directing Defendant, by a date certain, to make publicly available and directly link from the Mobile Website homepage, a statement of Defendant's Accessibility Policy to ensure the persons with disabilities have full and equal enjoyment of the Mobile Website and shall accompany the public policy statement with an accessible means of submitting accessibility questions and problems;

K. An award to Plaintiff of her reasonable attorney's fees, costs and expenses; and

L. Such other and further relief as the Court deems just and equitable.

## COUNT II – TRESPASS

77.     Plaintiff re-alleges paragraphs 1 through 54 as if set forth fully herein.

78.     Plaintiff's tangible personal property, being his mobile device and the personal information and browsing history stored therein, has suffered a trespass by Defendant on each and every date that the Plaintiff has accessed Defendant's Mobile Website, due to Defendant's employment of software analytics which are present on and through the Mobile Website, which the Plaintiff has navigated.

18

79.     At all relevant times, Plaintiff did not consent to and was unaware that the Mobile Website was placing software on his mobile device due to his inability to effectively communicate with and fully view and access the Website.

80.     Plaintiff did not consent to the placement of tracking and information securing software on his mobile device; therefore, Defendant has committed a trespass against Plaintiff by placing such software on his mobile device without his knowledge or consent.

81.     By the acts described hereinabove, Defendant has repeatedly and persistently engaged in trespass of Plaintiff's personal property in violation of Florida common law against trespass.

82.     Defendant's installation, operation, and execution of software on Plaintiff's mobile device have directly and proximately impaired the condition and value of the Plaintiff's mobile device, thereby causing Plaintiff damages.

83.     At the Mobile Website location, Defendant has a "Privacy Policy" that discusses the automatic gathering of information from, including the automatic placement of cookies and other information gathering software on, computers and mobile devices of users of the Website such as Plaintiff.  A copy of that "Privacy Policy" is attached hereto as Exhibit "B" and its contents are incorporated herein by reference.

84.     Defendant's trespass to chattels, nuisance, and interference has caused real and substantial damage to Plaintiff as follows:

a)  By consuming the resources of and/or degrading the performance of Plaintiff's mobile device (including space, memory, processing cycles, and internet connectivity);

b)  By infringing on Plaintiff's right to exclude others from his mobile device;

c)  By infringing on Plaintiff's right to determine, as the owner of his mobile device, which programs should be installed and operated on his mobile device;

d)  By compromising the integrity, security, and ownership of Plaintiff's mobile device; and

e)  By forcing Plaintiff to expend money, time, and resources in order to remove the programs that had been installed on his mobile device without notice or consent.

85.    Defendant's actions were taken knowingly, willfully, intentionally, and in reckless disregard for Plaintiff's rights under the law.

WHEREFORE, Plaintiff demands a judgment be entered against Defendant for all of Plaintiff's compensatory damages, interest, costs, and such further relief as the Court deems just and equitable.


DATED:  July 17, 2019.


**RODERICK V. HANNAH, ESQ., P.A.**
Counsel for Plaintiff
8751 W. Broward Blvd., Suite 303
Plantation, FL 33324
T. 954/362-3800
954/362-3779 (Facsimile)
Email:  rhannah@rhannahlaw.com



By____*s/ Roderick V. Hannah*_____
        RODERICK V. HANNAH
        Fla. Bar No. 435384

**LAW OFFICE OF PELAYO DURAN, P.A.**
Co-Counsel for Plaintiff
4640 N.W. 7th Street
Miami, FL 33126-2309
T. 305/266-9780
305/269-8311 (Facsimile)
Email: duranandassociates@gmail.com



By ____*s/ Pelayo M. Duran*_____
        PELAYO M. DURAN
        Fla. Bar No. 0146595